IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16–cr-30079-SMY |
| | ) | |
| | ) | |
| OMARR D. TEAGUE, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING OPINION AND STATEMENT OF REASONS PURSUANT TO 18 U.S.C. § 3553(c)

This matter is before the Court on remand from the Seventh Circuit Court of Appeals for resentencing of Defendant Omarr Teague. This Sentencing Opinion supplements the Court's findings made on the record during Defendant's resentencing hearing on April 26, 2018.

## INTRODUCTION

On June 22, 2016, a single-count Indictment was returned against Teague. (Doc. 1). Count 1 charged that on or about May 23, 2016, Teague, a convicted felon, possessed a .22 caliber revolver. (Id.). On October 27, 2016, absent a plea agreement, Teague pled guilty. (Doc. 29).

Teague was sentenced to 21 months of imprisonment, two years of supervised release, a $150 fine and $100 special assessment on March 7, 2017. (Docs. 48 and 53). The terms of imprisonment and supervised release were within the range of sentences advised by the United States Sentencing Commission Guidelines ("Guidelines") as interpreted by the United States Probation Office. (First Amended Presentence Investigation Report, Doc. 37 at ¶¶ 59 and 61).

The United States appealed (Doc. 57), and on March 30, 2018, the Seventh Circuit vacated the sentence and remanded the case to this Court for resentencing, finding that the

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 16–cr-30079-SMY |
| OMARR D. TEAGUE, | ) | |
| Defendant. | ) | |

## SENTENCING OPINION AND STATEMENT OF REASONS PURSUANT TO 18 U.S.C. § 3553(c)

This matter is before the Court on remand from the Seventh Circuit Court of Appeals for resentencing of Defendant Omarr Teague. This Sentencing Opinion supplements the Court's findings made on the record during Defendant's resentencing hearing on April 26, 2018.

## INTRODUCTION

On June 22, 2016, a single-count Indictment was returned against Teague. (Doc. 1). Count 1 charged that on or about May 23, 2016, Teague, a convicted felon, possessed a .22 caliber revolver. (Id.). On October 27, 2016, absent a plea agreement, Teague pled guilty. (Doc. 29).

Teague was sentenced to 21 months of imprisonment, two years of supervised release, a $150 fine and $100 special assessment on March 7, 2017. (Docs. 48 and 53). The terms of imprisonment and supervised release were within the range of sentences advised by the United States Sentencing Commission Guidelines ("Guidelines") as interpreted by the United States Probation Office. (First Amended Presentence Investigation Report, Doc. 37 at ¶¶ 59 and 61).

The United States appealed (Doc. 57), and on March 30, 2018, the Seventh Circuit vacated the sentence and remanded the case to this Court for resentencing, finding that the

calculation of the base offense level should have counted Teague's prior conviction as a "crime of violence." (Doc. 71-1). In the meantime, Teague had completed his term of imprisonment under the original sentence and had been placed on supervised release on December 1, 2017. (Doc. 74).

The United States Probation Office prepared an updated PSR prior to the resentencing hearing. (Doc. 74). As accepted by the Court, the updated PSR sets forth the following facts relevant to the offense conduct: Teague was arrested after police responded to a call that a man walked up to a group of two women and another man (identified as "D.H."), brandished a firearm and told D.H. to follow him. (Doc. 74 at ¶ 9). Teague then allegedly questioned D.H. about rumors the latter was allegedly circulating about Teague's sexuality. (Id. at ¶ 11). Teague admitted that he questioned D.H., but denied possessing or brandishing a gun during the incident. (Id. at ¶ 12). Teague's girlfriend, who was present during the questioning, stated that she did not see him in possession of a gun. (Id. at 11). When police arrived at Teague's apartment, however, they found a .22 caliber pistol in a plastic bag in a paint can during a consensual search. (Id. at ¶ 10). Teague stated he had found the gun four days earlier while at work and did not call the police for fear of getting in trouble as a convicted felon, and had not touched the gun since placing it in the paint can at that time. (Id. at ¶ 12).

Teague's prior conviction was for Second Degree Murder in Cook County, Illinois on September 12, 2002. (Id. at ¶¶ 1, 8 and 32). Teague pled guilty to stabbing his brother Lorenzo during a verbal and physical fight between the brothers, in response to Lorenzo hitting Teague's girlfriend in the face. (Id. at ¶ 32). Teague's only other prior conviction was for battery at age 17; he pled guilty and received one year of court supervision. (Id. at ¶ 31). He successfully completed that term of supervision. (Id.).

Teague was physically abused by his stepfather growing up, including daily whippings

with a belt while nude. (Id. at ¶ 42). He grew up in an area of Chicago with high gang activity and reported being forced to join at 15 after being beaten by members of the Gangster Disciples, although he left the gang at 17. (Id. at ¶ 43). He has two children, one in her twenties and one under the age of five. (Id. at ¶ 45). He is active in church, having become a licensed minister with the Ambassadors of Christ Church. (Id. at ¶ 54).

Pursuant to the Seventh Circuit's Opinion and direction, Probation determined that Teague's Base Offense Level was 20 and that a 4-level Specific Offense Characteristics enhancement applied because the firearm at issue was possessed while committing the felony of unlawful restraint. (Id. at ¶¶ 19 and 20). Probation then applied a 3-level total reduction for Teague's acceptance of responsibility, yielding a Total Offense Level of 21. (Id. at ¶¶ 26-28). With a Criminal History Category of II, the calculated Guidelines range was 41-51 months for imprisonment, 1-3 years for supervised release, a fine range of $15,000 to $150,000, and costs of prosecution. (Id. at ¶¶ 63, 65, 67, 69 and 70).

## **RESENTENCING HEARING**

At the resentencing hearing, the Government acknowledged that Teague had been doing well on supervised release, and noted that Teague had a large number of supporters at each of the sentencing hearings. It argued however that the specific circumstances of the offense demonstrated that Teague has a serious character flaw, in that he chose to deal with the perceived slight against his sexuality by confronting the alleged source of the rumors with a loaded gun. The Government also emphasized the seriousness of the crime and the need to promote respect for the law. It argued for a term of imprisonment of 41 months, the low end of Guideline range.

Defendant's counsel emphasized the progress Teague had made since he had been charged in the case. He noted that Teague had been released from the Bureau of Prisons for nearly six months and was fully compliant with the terms of his supervised release. He argued

that sending Teague back to prison after six months of release would undermine the progress he had made in putting his life back together, including the loss of Teague's full-time employment for PFP Properties, helping maintain and remodel rental properties. In his allocution, Teague testified that he knows prison is a dangerous place to be and that he appreciates the need to do everything he could not to go back. Teague asked that he not be sentenced to additional time in prison.

Based on the PSR, oral arguments made by counsel, Teague's allocution, and my consideration of the 18 U.S.C. § 3553(a) factors, I sentenced Teague to a below-Guidelines term of imprisonment of time served (essentially reimposing the 21 month sentence previously pronounced), three years of supervised release (an increase of one year over the previous sentence), a $150 fine and a $100 special assessment. I also reimposed the previous special conditions and added an additional special condition requiring Teague to participate in mental health services to help him control any future emotional volatility.

## LEGAL ANALYSIS

### Legal Standard

In 2005, the United States Supreme Court held that the United States Sentencing Commission's Guidelines were "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). The Court later clarified that the Guidelines are "advisory only." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). That said, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain her conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018) (quoting *Gall v. United States,* 552 U.S. 38, 46 (2007)). "[A] major departure should be supported by a more significant justification than a minor one." *Gall* at 50.

The process for determining an appropriate sentence is relatively simple, though not always straightforward:

> First, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.... [T]he Guidelines should be the starting point and the initial benchmark. The district court must then consider the arguments of the parties and the factors set forth in § 3553(a). When determining a sentence, the court must make an individualized assessment based on the facts presented. If [it] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Finally, [a]fter settling on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018) (citing *Gall,* 552 U.S. at 50-51 and *Peugh v. United States*, 569 U.S. 530 (2013)) (internal quotation marks omitted). At the heart of the sentencing process is consideration of the Section 3553(a) factors, which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines….

(5) any pertinent policy statement;
   (A) issued by the Sentencing Commission….;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In assessing how the various statutory sentencing factors apply to an individual defendant, the Court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (quoting *Gall* 552 U.S. at 50). Similarly, a sentence outside the Guidelines range "must not be presumed unreasonable." *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008).

## Sentencing Methodology

Consistent with the above-referenced principles, I began by determining the applicable Guidelines range. I agreed with Probation's calculations, finding that they were accurate and in accordance with the Seventh Circuit's mandate. I then considered whether any departures pursuant to the Guidelines were available and appropriate, and determined that no departure was warranted. Finally, I considered whether to vary from the Guidelines range based on my independent obligation to apply the 18 U.S.C. § 3553(a) factors.

### *Section 3553(a) Analysis*

Section 3553(a) directs a sentencing court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing including, to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment, to deter criminal conduct, to protect the public from future crimes by the defendant, and to promote rehabilitation. *United States v. Jackson*, 537 F. Supp. 2d 990, 991 (E.D. Wis. 2008). The remaining 3553(a) factors aid courts in making this determination, and are largely discussed above (i.e. nature of offense, defendant characteristics, etc.).

A sentence is reasonable if the Court "gives meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual

circumstances of the case." *United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Sentencing judges "have discretion over how much weight to give a particular factor. While the weighing must fall 'within the bounds of reason,' those bounds 'are wide.' " *Boroczk* at 624 (quoting *United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012)).

### *Specific and General Deterrence*

The concept of general deterrence is premised on an assumption that imposing an appropriate sentence will dissuade others from committing similar crimes. The purpose of specific deterrence is the prevention of future harm to the public by the defendant, without reference to the mechanism for achieving it. I find that the goals of specific and general deterrence will not be appreciably advanced in this case by an additional term of incarceration.

First, additional prison time will not make Teague less likely to reoffend than rehabilitation. While incarceration may deter a given offender from committing future crimes and obviously incapacitates him during his prison time, it is not the only route to the goal. Rehabilitation can also prevent reoffending and recidivism. As the Seventh Circuit noted in *United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011), "self-motivated rehabilitation lends strong support to the conclusion that imprisonment is not necessary to deter a defendant from engaging in future criminal conduct or to protect the public from his future criminal acts." *Robertson*, 662 F.3d at 878 (quoting *Gall*). Teague has demonstrated a sincere desire to turn his life around. He has built a robust support system and has made significant progress in creating a productive life in the outside world. In his allocution, Teague emphasized his appreciation that prison is a dangerous place and that he needs to do everything in his power to avoid going back. More time in prison is not going to strengthen his resolve. The additional year of supervised release and the added special condition for mental health counseling will do more to prevent

Teague's volatility from ruining his and others lives than additional months of incarceration under the circumstances.

As to general deterrence, it is difficult to see how an additional 20 or more months of incarceration would significantly deter others from committing a similar crime. The Seventh Circuit has recognized that the importance and effectiveness of general deterrence varies depending on the type of crime. See *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018). Here, the value of general deterrence on this type of crime is debatable. Possession of a firearm by a felon is a matter of affirmative choice. As opposed to the simple fact that Teague possessed a firearm, the Government emphasized the circumstances surrounding the situation, including Teague's volatility. Those overall circumstances suggest that rational and measured consideration played little part in it. As such, I found the general deterrent impact of a longer prison sentence is outweighed by considerations of specific deterrence and rehabilitation.

### *Just Punishment, Promotion of Respect for the Law and Seriousness of the Crime*

"Punishment is justified under one or more of three principal rationales: rehabilitation, deterrence, and retribution. It is the last of these, retribution, that most often can contradict the law's own ends." *Kennedy v. Louisiana*, 554 U.S. 407, 420 *as modified* (Oct. 1, 2008), *opinion modified on denial of reh'g*, 554 U.S. 945 (2008) (quotation omitted). "Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence." *Williams v. People of State of N.Y.*, 337 U.S. 241, 248 (1949).

Supervised release, coupled with the appropriate conditions, "can have a significant impact on both [the offender] and society...Often these conditions comprehensively regulate significant facets of their day-to-day lives...They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or

psychotherapist." *Gall*, 552 U.S. 38, 47 n. 4 (2007) (quotation omitted). While certainly not as harsh as additional imprisonment, extending Teague's supervised release by 50% is by no means an easy punishment.

Teague's crime was serious. Regardless of whether his conduct was the result of emotional volatility, he possessed a firearm and created a very dangerous situation by using it to threaten and coerce the subject of his anger. That said, he has already served a significant stretch in prison for this crime. The need to add to his sentence to satisfy the concepts of retribution and promoting respect for the law are outweighed in this case by the goals of rehabilitation and specific deterrence.

### *Sentence Disparities*

I have also considered the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct. Other than the advisory Guidelines range, there is no evidence before the Court regarding the type of sentences Defendants with similar records who have been found guilty of similar conduct have received. The Government asserts that following the Guidelines represents the "best way to curtail unwarranted disparities[,]" as they "are designed to treat similar offenses and offenders similarly." (Doc. 41 at 6) (quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009)). However, the "best way" is not the only way. Otherwise, the Guidelines would cease to be advisory and would become mandatory again. Moreover, to be a meaningful factor in this case, disparity must be measured by reference to other offenders who not only have similar mitigating factors and aggravating factors, but who also have similarly demonstrated post-release rehabilitative efforts. In that vein, if another individual was before the Court with the same record, same background and a similar rehabilitation effort, I would be hard-pressed to impose a different sentence. Obviously, by employing the term "unwarranted," the Guidelines

contemplate some disparity in sentencing when, as here, it is warranted and justified.

*Rehabilitation*

In *Pepper v. United States*, 562 U.S. 476, 504-505 (2011), the Supreme Court held that on a general remand for resentencing, a district court "may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." This is such a case.

Normally, determining what type disposition best serves the objectives of sentencing involves primarily educated guesswork. A sentencing judge relies heavily on the hard work of the probation officer in setting forth the Guidelines and calculations, and detailing the offender's criminal and personal history, education, substance abuse or mental health issues, and other relevant factors in the PSR. The judge must then take this information and apply his or her own experience, judgment and discretion to determine what sentence best achieves the applicable sentencing goals. In many cases, the only opportunity for offenders to access rehabilitative services such as GED programs, substance abuse/psychological counseling and job training, is in the prison context.

In some cases, imprisonment would actually be detrimental to the rehabilitation process. Such is the case here, where Teague served his original prison term and upon release has made significant strides toward establishing a normal, stable, law-abiding life. An additional term of imprisonment would serve to derail much of the progress Teague has made. Further, Teague's access to rehabilitative programs and resources would not be appreciably improved by putting him back in prison. The programs available to inmates that would significantly aid Teague – mental health services and a program to help him get his GED – are also available outside prison walls. Because Teague has demonstrated a commitment to bettering himself in the outside world, I am satisfied that making participation in such programs a condition of supervised

release is sufficient to ensure his participation.

Under these unique circumstances, I found that an extended term of supervised release with appropriate conditions would do more to advance the goal of rehabilitation than an additional term of incarceration. This conclusion is bolstered by the fact that Teague has already made significant progress while on supervised release. While judges are typically relegated to imposing sentences while staring into a crystal ball, this Court has the unusual benefit of knowing how Teague has comported himself while on supervised release. In doing so, he has demonstrated that a sentence of time served with extended supervised release is sufficient and appropriate to accomplish the sentencing goal of rehabilitation.

## CONCLUSION

I am aware the sentence I am imposing represents a significant variance from the range of punishments suggested by the Guidelines. I do not do so lightly. However, I am persuaded that on balance, a sentence of additional incarceration to match the Guidelines range would be greater than necessary to serve the goals of sentencing as set forth in 18 U.S.C. § 3553(a).

**IT IS SO ORDERED.**

**DATED: November 20, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**